858 P.2d 420

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Martha SIZEMORE, Defendant–
Appellant.**

**No. 13674.**

Court of Appeals of New Mexico.

June 28, 1993.

Tom Udall, Atty. Gen., Patricia A. Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

MINZNER, Chief Judge.

Defendant appeals her conviction for receiving stolen property over $2,500, contrary to NMSA 1978, § 30–16–11(A) (Cum. Supp.1992), challenging the sufficiency of the evidence to support her conviction. Because the State failed to prove that Defendant was in actual or constructive possession, which is required to support her conviction under Section 30–16–11, we hold that her conviction is not supported by sufficient evidence, and we reverse.

*FACTS*

The items stolen, which were taken from three different businesses on three different occasions, included fifteen handguns, two knives, a pair of binoculars, and a saw. Defendant's boyfriend, Jimmy Clark, was implicated in the three burglaries. The police received an anonymous tip regarding the burglaries that led them to place several individuals under surveillance. After watching several residences, police began to follow a car driven by Clark. Defendant was sitting in the front passenger seat. When the police attempted to stop the vehicle, a high-speed car chase ensued. The car chase eventually ended with Clark stopping his vehicle, getting out of the vehicle, and attempting to flee on foot. He was apprehended shortly thereafter. Defendant stayed in the car and police found a duffle bag containing fourteen handguns in the vehicle at her feet. Another handgun was found next to the bag on the passenger-side floorboard of the car. Defendant was arrested.

Subsequently, the two stolen knives were found in a back bedroom of Defendant's mother's house. One knife was between the mattress and box spring of the bed, and the other was found in a closet that also contained clothes belonging to Defendant's

mother and Defendant's mother's niece. Both knives were hidden from view. The saw was also found in the house. Defendant and Clark had spent the previous night at Defendant's mother's house. Clark testified that he placed all the stolen property in the bedroom and in the car. Defendant's mother testified that she believed Defendant spent the night before the search in the bedroom where the knives were found. Defendant, on the other hand, testified that she spent the night prior to the search on her mother's living room couch. Defendant, who helped Clark pawn the binoculars, also testified that Clark told her the binoculars belonged to his brother and that she helped Clark pawn them because he did not have the required driver's license. Clark corroborated Defendant's testimony.

### ELEMENTS OF THE CRIME

In order to obtain a conviction in New Mexico for receiving stolen property, the State must prove that the defendant intentionally received, retained or disposed of stolen property, knowing or believing that it had been stolen, unless the property is received, retained, or disposed of with the intent to return it to its owner. Section 30–16–11(A); *State v. Zarafonetis*, 81 N.M. 674, 675, 472 P.2d 388, 389 (Ct.App.), *cert. denied*, 81 N.M. 669, 472 P.2d 383 (1970). In this case, the jury was instructed, pursuant to SCRA 1986, 14–1650, that guilt depended on the State having proved beyond a reasonable doubt that, among other things, Defendant kept possession of property when she knew or believed it to have been stolen. Section 30–16–11(A); SCRA 14–1650; *see State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992) (test for sufficiency of evidence is whether any rational trier of fact could find evidence to support a guilty verdict beyond a reasonable doubt).

█ In this context, and the jury was so instructed, possession requires proof that Defendant knew what the object was, knew that the object was on her person or in her presence, and that she exercised control over it. SCRA 1986, 14–130. The State's case against Defendant depends on the applicability of the concept of constructive possession, defined as knowingly having the power and intention at a given time to exercise dominion and control over the given property, from which the requisite actual dominion and control are inferred. *See Nelson v. State*, 628 P.2d 884, 889 (Alaska 1981); *Riddle v. State*, 303 Ark. 42, 791 S.W.2d 708, 709 (1990). *See generally* Caroll J. Miller, Annotation, *What Constitutes "Constructive" Possession of Stolen Property To Establish Requisite Element of Possession Supporting Offense of Receiving Stolen Property*, 30 A.L.R. 4th 488 (1984); Ray A. Brown, *The Law of Personal Property* § 2.6 (Walter B. Raushenbush auth., 3d ed. 1975). Our statute is not unique, *see, e.g., Austin v. State*, 26 Ark. App. 70, 760 S.W.2d 76, 77 (1988), nor are the facts of this case uncommon. *See Nelson*, 628 P.2d at 889.

█ At trial and on appeal, the State relies on the same circumstantial evidence to prove both possession of the property, which by law includes an element of knowledge, *see* SCRA 14–130, and knowledge that the property was stolen, which is a distinct statutory requirement. The knowledge or intent component of possession is distinct from the statutory requirement that the State prove Defendant knew or had reason to know that property of which she kept possession was stolen. *See id.; Riddle*, 791 S.W.2d at 709. In this opinion, we will refer to the former as intent and the latter as knowledge. Although knowledge (that the property is stolen) may be circumstantially proved by unexplained possession, *Zarafonetis*, 81 N.M. at 675, 472 P.2d at 389, we should not infer knowledge from possession or possession from knowledge without having some basis in fact for the initial inference. *See State v. McCaughey*, 14 Wash.App. 326, 541 P.2d 998, 1000 (1975) ("It is illogical to extrapolate the inferred fact of defendant's knowledge into the inferential conclusion of defendant's possession."). We conclude that the State failed in its burden of proof because the jury was required to infer Defendant's knowledge and possession from circumstances that do not as a matter of law support such inferences.

The State relies on Defendant's proximity to the duffel bag in the car, her previous presence in her mother's back bedroom, and her participation in the pawning of the binoculars to prove possession and knowledge. We discuss each in turn. We note that the jury instructions do not distinguish between the stolen items or even identify them. We assume, but need not decide, that had the State proved possession and knowledge of the guns, the knives, or the binoculars, the conviction should stand. *See Nelson,* 628 P.2d at 889.

*THE GUNS*

■ Presence in the proximity of stolen goods is insufficient to support a conviction for receiving stolen property. *State v. Browder,* 83 N.M. 238, 239, 490 P.2d 680, 681 (Ct.App.1971). This is particularly true when the area is shared with other people. *Id.; see also State v. Brietag,* 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct.App.1989) (defendant's possession of drugs cannot be inferred solely from discovery at quarters shared with others).

■ Defendant's close proximity to the duffel bag might support an inference of knowledge in the present context, but not of the requisite possession. A person has knowledge of stolen property if he or she either (1) actually knows the property is stolen, (2) believes the property is stolen, or (3) has his or her suspicions definitely aroused and refuses to investigate for fear of discovering that the property is stolen. Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 401 (3d ed. 1982).

■ The State argues Defendant's knowledge can be inferred from the fact she borrowed her uncle's car so that Clark could transport the guns. We disagree. There is no evidence that directly or circumstantially proves that Defendant even knew of the guns' existence, much less their provenance, when she asked to borrow the car. Relying on the third possibility listed above, the jury could have found that Defendant gained the requisite knowledge after she entered the car, based on the evidence that two guns were visible in the bag's opening. However, we do not

think the jury could have determined that Defendant possessed the guns at or after that point. We note that Clark testified he placed the stolen property in the car and that he was in control of the car during the car chase. "The reasonableness of any hypothesis of constructive possession based solely on circumstances is particularly suspect in the face of undisputed direct proof of exclusive possession in some other person." *McCaughey,* 541 P.2d at 1000; *see also State v. Kimbrough,* 109 N.J.Super. 57, 262 A.2d 232, 234–36 (1970).

We have previously held that a jury can draw an inference of guilt from unexplained flight. *State v. Kenny,* 112 N.M. 642, 646, 818 P.2d 420, 424 (Ct.App.), *cert. denied,* 112 N.M. 499, 816 P.2d 1121 (1991); *State v. Hardison,* 81 N.M. 430, 432, 467 P.2d 1002, 1004 (Ct.App.1970); *see also State v. Trujillo,* 95 N.M. 535, 541–42, 624 P.2d 44, 50–51 (1981) (evidence of flight, an aborted plan of flight, or escape from incarceration is admissible and relevant because it tends to show consciousness of guilt). In this case, however, Defendant was a passenger in the car when Clark attempted to elude the police. During the chase, the car was traveling at a high rate of speed. Officers testified that no one could have exited the car during the car chase without incurring great bodily harm. When the chase ended and Clark exited the car and fled on foot, Defendant stayed in the car. If flight can be used to infer guilt, it would seem logical that the failure to flee might indicate the lack of a consciousness of personal guilt. *Cf. Commonwealth v. Scudder,* 490 Pa. 415, 416 A.2d 1003 (1980) (fact that van in which defendant was a passenger fled from police could not be used to infer guilt without evidence that defendant directed, encouraged, or consented to the flight).

■ Moreover, the statutory element of control allows for conviction only when the defendant knowingly procures or receives the thing possessed or was aware of his or her control over the item for a sufficient period to have been able to terminate the possession. *See State v. McCoy,* 116 N.J. 293, 561 A.2d 582, 585 (1989); *cf. State v. Lopez,* 109 N.M. 578, 787 P.2d 1261 (Ct. App.1990) (recognizing that defendant's

"intent to return" stolen items to their rightful owner is a valid defense to charge of receiving stolen property). That is not true of Defendant, who cannot be said to have had an opportunity to exercise meaningful control over the duffle bag.

## THE KNIVES

 The State also relies on evidence that the knives were found in a bedroom Defendant allegedly occupied. The fact that Defendant had occupied the premises where stolen goods were found, by itself, would not prove she exercised dominion and control over the objects. *Browder,* 83 N.M. at 239, 490 P.2d at 681. When persons other than Defendant had equal or greater access to the place where the illicit goods were discovered, possession may not be inferred solely from Defendant's access. *Id.; Commonwealth v. Davis,* 444 Pa. 11, 280 A.2d 119, 121 (1971). Something more is necessary to establish a link between the items and Defendant before the jury can properly infer that Defendant could control the items. *Brietag,* 108 N.M. at 371, 772 P.2d at 901; *see State v. Becerra,* 112 N.M. 604, 607, 817 P.2d 1246, 1249 (Ct.App.) (defendant's conduct and actions, as well as circumstantial evidence, may sufficiently prove constructive possession), *cert. denied,* 112 N.M. 440, 816 P.2d 509 (1991); *see also Owens v. State,* 192 Ga.App. 335, 384 S.E.2d 920, 925, *cert. denied* (1989).

## THE BINOCULARS

 The binoculars admittedly present the closest question of possession. Again, however, we think that there is insufficient evidence of intent to exercise dominion and control. "In a broad sense, the term 'possession' denotes facts pertaining to the relationship between a person and an item of property, as well as the consequences that attach to those facts." *McCoy,* 561 A.2d at 585.

In order to sustain a conviction, there must be proof that Defendant knew the binoculars were stolen. The evidence only shows that Defendant facilitated an apparently reasonable transaction for another person, which proof is insufficient to allow an inference that Defendant had reason to believe the property was stolen. *See State*

*v. Carter,* 138 Vt. 264, 415 A.2d 185, 188 (1980). In the absence of proof that Defendant knew the binoculars were stolen, we do not think an inference of intent to exercise dominion and control is justified.

## CONCLUSION

 Although we must view the evidence, whether it be circumstantial or direct, in the light most favorable to the verdict, *State v. Duran,* 107 N.M. 603, 605, 762 P.2d 890, 892 (1988), the appellate inquiry is whether the "facts are legally sufficient to support a finding of possession for purposes of criminal liability." *Becerra,* 112 N.M. at 608, 817 P.2d at 1250. After evaluating the evidence, the ultimate question in a criminal case is whether the evidence supports a verdict of guilt beyond a reasonable doubt with respect to every element of the crime. *See Garcia,* 114 N.M. at 273, 837 P.2d at 866. In the second stage, it is important that the appellate court scrutinize the relevant evidence and supervise "the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *Id.* at 274, 837 P.2d at 867. Unless the facts make the analysis clear, the reviewing court must be able to articulate an analysis the jury might have used to determine guilt, and that analysis must be reasonable. We think it is important to be able to explain how the jury might have reasoned that Defendant had both knowledge and possession of either the guns, the knives, or the binoculars. We cannot.

We therefore hold that there was insufficient evidence of knowledge and possession to support Defendant's conviction of receiving stolen property over $2,500. In view of our disposition, we do not address the remaining issues. Defendant's conviction is reversed, and the case is remanded with instructions to dismiss the charges against her.

IT IS SO ORDERED.

CHAVEZ and BLACK, JJ., concur.